IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:17-cv-511

EPIC GAMES, INC. and EPIC GAMES
INTERNATIONAL S.à.r.l.,

        Plaintiffs,

v.

B███████ B██████,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

        Plaintiffs, Epic Games, Inc. ("Epic") and Epic Games International S.à.r.l. ("Epic Games International") (collectively, "Plaintiffs"), complain of Defendant B█████ B██████ ("████████" or "Defendant") as follows:

## <u>NATURE OF THE ACTION</u>

        1.    This is a civil action seeking injunctive relief and damages against Defendant for (i) copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*; (ii) contributory copyright infringement in violation of the Copyright Act, §§ 106 and 501, *et seq*; (iii) circumvention of technological measures in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201(a)-(b), 1203; (iv) breach of contract in violation of North Carolina law; and (v) intentional interference with contractual relations in violation of North Carolina law.

        2.    The Copyright Act protects the owners of creative works from the unauthorized use of those works by others. The right to prepare derivative works based upon a copyrighted work is one of the exclusive rights granted to copyright holders under the Act. The definition of

derivative work encompasses any form in which the original work may be recast, transformed, or adapted. With a few exceptions that do not apply here, it is unlawful to make unauthorized derivative works without the permission of the copyright owner. It is likewise unlawful to induce, cause, or materially contribute to the creation of derivative works by others.

3. The Digital Millennium Copyright Act ("DMCA") was enacted in 1998 to bring the Copyright Act into the digital age. Among other things, the DMCA prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition.

4. This is a copyright infringement and breach of contract case in which the Defendant is infringing Epic's copyrights by injecting unauthorized computer code into the copyright protected code of Epic's popular Fortnite® video game.[1] In so doing, Defendant is creating unauthorized derivative works of Fortnite by modifying the game code and, thus, materially altering the game that the code creates and the experience of those who play it.

5. Defendant's cheating, and his inducing and enabling of others to cheat, is ruining the game playing experience of players who do not cheat. The software that Defendant uses to cheat infringes Epic's copyrights in the game and breaches the terms of the agreements to which Defendant agreed in order to have access to the game.

6. Defendant was banned from playing Fortnite for this conduct but nevertheless continued to play using other accounts he created using false names. He has also continued to cheat, induce others to cheat, and has modified, and instructed other cheaters how to modify, the

---

[1] Game names that are registered trademarks of Epic are shown with the federal registration symbol the first time each game name appears and without it thereafter.

cheats so that they are specifically designed to circumvent technological measures Epic put in place to control access to Fortnite's copyrighted code in an effort to prevent cheating.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 106 and 501, *et. seq*.  This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Defendant because, as described below, Defendant agreed to be subject to the exercise of jurisdiction over him by the courts in this District.  This Court also has personal jurisdiction over Defendant because Defendant has purposefully availed himself of the privileges of conducting activities and doing business in North Carolina and in this District, thus invoking the benefits and protections of North Carolina's laws, by entering into contractual agreements with Epic in North Carolina, and repeatedly accessing Epic's servers, which are located in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a District in which a substantial part of the events giving rise to Plaintiffs' claims occurred, in which Defendant committed acts of copyright infringement, and/or where Plaintiffs' injuries were suffered.  Venue is also proper in this District because, as described below, Defendant consented to venue in this District.  Venue is also proper in this District under 28 U.S.C. § 1391(c)(3) because Defendant is not resident in the United States and may be sued in any judicial district.

## THE PARTIES

10.     Epic is a corporation duly organized and existing under the laws of the state of

Maryland. Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

11.     Epic Games International is a Luxembourg Société à Responsibilité Limitée organized and existing under the laws of Luxembourg, acting through its Swiss branch, and having a principal business in Switzerland.

12.     On information and belief, Defendant B██████ B█████, a.k.a. "Culturalism", a.k.a. "문화주의" ("Culturalism" in Korean characters), is a citizen and resident of Canada.

## FACTS APPLICABLE TO ALL CLAIMS

### *Epic and Fortnite*

13.     Founded in 1991, Epic is a Cary, North Carolina-based developer and publisher of computer games and content creation software. Epic is recognized worldwide as the creator of the Unreal®, Gears of War®, and Infinity Blade® series of games. Epic is also globally known as the creator of the Unreal Engine® content creation engine software. More recently, Epic has released the multiplayer online battle arena game Paragon®, the virtual reality game Robo Recall®, and Fortnite.

14.     Fortnite is a co-op survival and building action game that has been described as being "about exploration, scavenging gear, building fortified structures and fighting waves of encroaching monsters hellbent on killing you and your friends."[2]

15.     In Fortnite, players may join together online to build forts, weapons, and traps in an effort to rebuild and defend towns left vacant in the wake of "the Storm" from the monsters that populate the Fortnite world.

---

[2] Michael McWhertor, *Epic Games' Fortnite will be the developer's first Unreal Engine 4 game*, July 12, 2012, available at: https://www.polygon.com/gaming/2012/7/12/3155138/epic-games-fortnite-will-be-the-developers-first-unreal-engine-4-game

16.     Fortnite was first released in a limited manner in October 2013.

17.     Fortnite was released broadly on July 25, 2017.  Fortnite's free-to-play "Battle Royale" game mode was released to the public on September 26, 2017.

18.     Fortnite has been extremely popular.  It already has over seven million players and is on track to be Epic's most successful game yet.  (A true and correct screen print from the Fortnite page on Epic's website [available at: https://www.epicgames.com/fortnite/en-US/buy-now/battle-royale] that provides a glimpse into Fortnite's violent and cartoonish world is pictured below at **Figure 1**.)



*Figure 1.*

19.     Like other games in the "battle royale" genre, Fortnite's Battle Royale game mode involves dropping (in Fortnite, by glider from a flying "battle bus," pictured above) a limited number of players into a large map.  Fortnite's Battle Royale game mode combines Fortnite's building skills and destructible environments with intense player vs. player ("PvP") combat.  The players battle each other until only one player remains standing.  That player wins the game.

5

20.     In designing Fortnite's Battle Royale game mode, Epic made a conscious choice not to sell items to players that would give any player a competitive advantage in order to ensure a fair playing field for all players.

### *Epic's Copyrights in Fortnite*

21.     Epic is the author and owner of all the rights and title to the copyrights in Fortnite, including without limitation, in its computer software.

22.     Epic's copyrights in various versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), and TX008-352-178 (dated December 23, 2016).  (True and correct copies of these certificates of registration are attached hereto collectively as **Exhibit A**.)

23.     The United States and 173 other countries around the world are signatories to the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention").

24.     Under articles 2 and 3 of the Berne Convention, the owner of a U.S. copyright may enforce that copyright in Canada and in the other 172 contracting countries to the Berne Convention.  (A true and correct screen print from the World Intellectual Property Organization website showing the contracting parties to the Berne Convention is attached as **Exhibit B** and is available online at: http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=15).

### *Epic's Terms of Service*

25.     In order to play Fortnite on PC—which is the platform on which Defendant is accessing and cheating at Fortnite in this case—a user must first create an account with Epic.  In order to create an account, a would-be user must affirmatively acknowledge that he or she has

"read and agree[d] to the Terms of Service" (the "Terms"). (A true and correct copy of the Terms of Service is attached hereto as **Exhibit C**.)

26.     The Terms apply to any use of, or access to, Fortnite using one's PC, as Defendant does in this case.

27.     The Terms also apply to any use of Epic's websites by any "guest or registered users . . . including any content, functionality, products, and services offered on or through" Epic's websites. (*See id*. at 1.) This encompasses Epic's Fortnite website and its guests and registered users.

28.     The Terms further apply to a user's "use of other Epic services that display or include the[] Terms." (*Id.* at 1.) This also covers Fortnite and those who use it.

29.     The Terms request that users read the Terms "carefully" before beginning to access or use Epic's services. (*Id.*)

30.     The Terms provide that "[b]y using [Epic's s]ervices, [the user] accept[s] and agree[s] to be bound and abide by these Terms . . ." (*Id.*) The Terms further provide that a user who does not want to agree to the Terms "must not use [Epic's s]ervices." (*Id.*)

31.     The Terms include a section on "Governing Law and Jurisdiction," which provides that "[a]ny dispute . . . arising out of or related to these Terms ("Claim") shall be governed by North Carolina law . . . .  Any legal suit, action, or proceeding arising out of, or related to, a [dispute or claim by the user arising out of or related to the Terms] shall be instituted exclusively in the federal courts of the United States or the courts of North Carolina, in each case located in Wake County." (*Id.* at 4.)

32.     This section of the Terms further provides that, by agreeing to the Terms, the user "agree[s] to waive any and all objections to the exercise of jurisdiction over [the user] by such courts and to venue in such courts." (*Id.*)

33.     The Terms explain that the services "including all content, features, and functionality thereof, are owned by Epic, its licensors, or other providers of such material and are protected by United States and international copyright . . . laws." (*Id.* at 1.)

34.     The Terms also inform the user that use and access of certain "software or services . . . may be subject to separate agreement . . . such as end user license agreements." (*Id.*)

35.     The Terms also include an "Intellectual Property Rights" section which sets forth the permissions users have with respect to Epic's intellectual property and things that users are prohibited from doing.  Specifically, the Terms provide that users:

     a.     are "permitted to use [Epic's s]ervices for [their] personal, non-commercial use only or legitimate business purposes related to your role as a current or prospective customer of Epic"; **but**

     b.     "**must not copy, modify, create derivative works of**, **publicly display**, publicly perform, republish, **or transmit any of the material obtained through [Epic's s]ervices**, or delete, or alter any copyright, trademark, or other proprietary rights notices from copies of materials from [Epic's s]ervices"; and

     c.     "must not reproduce, sell, or exploit for any commercial purposes any part of [Epic's s]ervices, access to [Epic's s]ervices or use of [Epic's s]ervices or any services or materials available through Epic's [s]ervices." (*Id.* at 2.) (emphasis added).

36.     The Terms also specifically prohibit anyone to "access or use the [Epic's services] for any purpose that is illegal or beyond the scope of the . . . intended use [of Epic's services] (in Epic's sole judgment)." (*Id*. at 3.)

37.     By creating an account with Epic in order to access, download, and play Fortnite, and by using Epic's services, including, without limitation, by playing Fortnite, Defendant agreed to be bound by the Terms.  And by creating multiple accounts, as Defendant did here, Defendant agreed to the Terms multiple times.

38.     The Terms constitute a valid and binding contract between Defendant and Epic.

39.     Defendant's conduct described herein violates the Terms and breaches Defendant's agreement with Epic.

### *Fortnite End User License Agreement*

40.     In order to play Fortnite, a user must first acknowledge that he or she has read and agreed to abide by the terms in the Fortnite End User License Agreement for PC ("EULA"). (A true and correct copy of the EULA is attached hereto as **Exhibit D**.)

41.     The EULA applies to any user who downloads, uses, or "otherwise indicates acceptance" of the EULA.  (*Id.* at 1.)

42.     Like the Terms, the EULA explicitly requests that individuals read the EULA "carefully."  (*Id.* at 1.)  The EULA further makes clear that the EULA "is a legal document that explains [the user's] rights and obligations" in connection with the access and use of Fortnite. (*Id.*)

43.     The EULA includes a section titled "Governing Law and Jurisdiction" under which the user agrees that the EULA will be deemed to have been made and executed in the State of North Carolina, U.S.A. (*Id.* at 5-6.)

44. This section of the EULA further provides that "[a]ny action or proceeding brought to enforce the terms of this Agreement or to adjudicate any dispute must be brought in the Superior Court of Wake County, State of North Carolina or the United States District Court for the Eastern District of North Carolina." (*Id.* at 6.)

45. Under this section of the EULA, "the user agrees to the exclusive jurisdiction and venue of these courts. . . .[and to] waive any claim of inconvenient forum and any right to a jury trial." (*Id.*)

46. The EULA grants an individual user "a personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use one copy of the Software on a device for [the user's] personal entertainment use." (*Id.*)

47. Epic also includes a "License Conditions" section in its EULA. (*Id.*) Within that section, the EULA specifically defines certain prohibited activities and states that **a player may not:**

    a. use Fortnite "commercially or for a promotional purpose;"

    b. "copy, reproduce, distribute, display, or use [Fortnite] in a way that is not expressly authorized in this Agreement;"

    c. "**reverse engineer, derive source code from, modify, adapt, translate, decompile, or disassemble it or make derivative works based on it;**"

    d. "**remove, disable, circumvent, or modify any proprietary notice or label or security technology included in it**;" or

    e. "**create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes**." (*Id.*) (emphasis added.)

48.     By accessing, downloading and/or using Fortnite, Defendant agreed to be bound by the EULA.

49.     Defendant also agreed to be bound by the EULA by affirmatively indicating his acceptance of its terms.

50.     Because Defendant's primary residence is not in the United States of America, his agreement is with Epic Games International S.à.r.l., acting through its Swiss branch.  (*See id*. at 1.)

51.     The EULA constitutes a valid and binding agreement between Epic Games International and Defendant.

52.     Defendant's conduct described herein violates the terms of the EULA and breaches Defendant's contract with Epic Games International.

### *The Defendant and His Unlawful Acts*

53.     Defendant is a cheater.

54.     Defendant uses cheat software ("cheats" or "hacks") to unlawfully modify Fortnite's software so that he has an unfair competitive advantage over other Fortnite players.

55.     Cheats give a cheater power to do or see things that others players cannot.  For instance, a cheat might enable the cheater to see through solid objects, teleport, impersonate another player by "spoofing" that player's user name, or make moves other players cannot, such as a spin followed by an instant headshot to another player.

56.     Nobody likes a cheater.  And nobody likes playing with cheaters.  These axioms are particularly true in this case.

57.     Defendant is using cheats in a deliberate attempt to destroy the integrity of, and otherwise wreak havoc in, the Fortnite game.  As Defendant intends, this often ruins the game

for the other players, and for the many people who watch "streamers," i.e., players who video stream their gameplay for the entertainment and benefit of others.

58.     Defendant is a moderator and member of the support staff of AddictedCheats.net, a cheat provider website (the "cheat provider") that supplies its registered users with cheats and hacks in exchange for money.

59.     Defendant frequently promotes these cheats on the cheat provider's discussion channel, and assists would-be cheaters with getting the cheats to run on Fortnite.

60.     Defendant's stated goal is to use the cheats to create unwanted chaos and disorder in Fortnite. He recently characterized Fortnite as the cheat provider's "highest priority."

61.     Defendant has bragged that he is working on his own cheat to use in Fortnite.

62.     In an effort to adversely impact as many people as possible while playing and cheating at Fortnite, Defendant specifically targets streamers. He has declared that it is his objective to prevent streamers from winning the game and has boasted in online cheating discussion channels that his goal is to "stream snipe," i.e., kill streamers as they stream. Defendant has said that making streamers hate Fortnite is Defendant "in a nutshell."

63.     The cheat software used by Defendant (and those whom Defendant induces to use such software) improperly injects unauthorized code into the active memory of the game as it runs. The cheat software manipulates the functionality of the game and gives the cheater an unfair advantage over other players, changing and disrupting the game.

64.     This unauthorized modification of the game's code as it runs on the cheater's computer and of the code that is sent back to Epic's servers materially changes both the game's code and the audio visual aspects of the game generated by the code. These changes create a

different version of the Fortnite game than the Fortnite game that is generated by Epic's copyright protected software.

65.    In using cheat software to modify the game's code in this way, Defendant and other cheaters who use the cheat create unauthorized derivative works based on Fortnite in violation of the Copyright Act.

66.    Use of the cheat software also violates the express terms of both the EULA and the Terms, both of which prohibit any modification of the game and the creation of derivative works based on Fortnite.

67.    Defendant has been banned at least once of for violating the Terms and the EULA. On information and belief, Defendant has circumvented this by creating numerous other accounts under false names and continues to play and cheat at Fortnite.

68.    In an effort to protect Fortnite's code from the continued efforts of Defendant and other users to cheat and create mayhem within Fortnite, Epic put in place certain technological measures to effectively control access to Fortnite's copyrighted code.

69.    In response, Defendant modified the cheat so that it is specifically designed to circumvent Epic's technological measures and instructed subscribers to the cheat provider website to do the same.

70.    This modification has no commercially significant purpose or use other than to circumvent Epic's technological measures.

71.    After successfully circumventing Epic's technological measures, Defendant posted his circumvention method to the cheat provider's discussion channel so that other cheaters could use it and bragged:

"Now method is exposed
 Epic Eat my ass"

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement in violation of
### the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)

72.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 71 of this complaint, as if set forth fully herein.

73.     Epic is the author, creator, and owner of all rights, title, and interest in a number of valid, registered, and enforceable copyrights in Fortnite.

74.     These copyrights are the subjects of the copyright registration certificates referenced above and attached hereto as Exhibit A, and are incorporated by reference as if fully set forth herein.

75.     Defendant has had and continues to have access to Fortnite.

76.     Defendant has infringed and continues to infringe Epic's copyrights in Fortnite by improperly using computer software that injects code into Fortnite's code which then materially modifies and changes Fortnite's code, thereby creating an unauthorized derivative work of Epic's copyrighted Fortnite code.

77.     Epic never authorized Defendant to create derivative works based on Fortnite.

78.     In creating such unauthorized derivative works, Defendant has infringed and continues to infringe Epic's copyrights and is liable to Epic for direct and willful infringement under 17 U.S.C. § 501, *et seq.*

79.     On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's infringement.

80.     In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

81. In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendant's willful infringement.

82. Defendant's conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Epic has no adequate remedy at law for Defendant's wrongful conduct because (i) Epic's copyrights are unique and valuable property that have no readily determinable market value; (ii) Defendant's infringement constitutes an interference with Epic's goodwill and customer relations; and (iii) Defendant's wrongful conduct, and the damages resulting therefrom are continuing. Therefore, Epic is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order under 17 U.S.C. § 503(a) that prohibits Defendant from further infringing Epic's copyrights and orders Defendant to destroy all copies of the cheats he is using against Epic in violation of Epic's copyrights

83. Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement**
**in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)**

84. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 83 of this complaint, as if set forth fully herein.

85. As set forth above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

86. Defendant is a moderator and support person for a cheat provider that sells and distributes cheat software which enables its users to hack and cheat at Fortnite.

87.     As described above, this cheat software unlawfully modifies Fortnite's copyrighted code in a manner that infringes Epic's copyrights by creating unauthorized derivative works of Epic's Fortnite software.

88.     Defendant materially contributes to the direct infringement of Epic's copyrights by other cheaters by touting the cheats in posts on online forums and/or discussion channels, actively encouraging and inducing other cheaters and would-be cheaters to purchase the cheats, and supporting their use of the cheats on Fortnite, including, without limitation, by enabling users to circumvent technological measures Epic has put in place to prevent the modification and preparation of derivative works based on Epic's copyrighted code.

89.     Defendant has actual knowledge of the direct infringing activity of these other cheaters described above, and causes or contributes materially to, and/or participates substantially in, such direct infringement.

90.     Defendant does so with the actual and/or constructive knowledge that the preparation of derivative works based upon Epic's Fortnite software infringes Epic's copyrights in the software.

91.     On information and belief, Defendant engages in such conduct to promote the cheat software that is sold on the cheat provider website where he works because Defendant obtains some financial benefit or value in consideration for his work on the cheat provider website.

92.     Accordingly, Defendant is liable for contributory copyright infringement of Epic's Fortnite game.

93.     On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's contributory infringement.

94.     In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

95.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to the Defendant's willful contributory infringement.

96.     As a result of Defendant's contributory copyright infringement, Epic has suffered and will continue to suffer, substantial and irreparable damage to its business reputation and good will, as well as actual losses in an amount not yet fully ascertained, but which will be further determined according to proof.   Epic's remedy at law is not adequate to redress the harm Defendant has caused and will continue to cause unless and until his conduct is otherwise restrained and enjoined.

97.     By reason of the foregoing, Epic is entitled to injunctive relief against Defendant pursuant to 17 U.S.C. § 502.

98.     Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
### (Circumvention of Technological Measures in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b))

99.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 98 of this complaint, as if set forth fully herein.

100.    As alleged above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

101.	Epic has designed technological security measures to prevent and control unauthorized access to Fortnite, and has implemented these measures in order to protect its copyrighted works.

102.	On information and belief, Defendant is using a cheat that contains technologies, products, services, devices, components, or parts that are primarily designed for the purpose of circumventing the technological security measures implemented in Fortnite.

103.	In addition, on information and belief, Defendant materially contributes to the sale, distribution, and use of the Fortnite cheats sold through the cheat provider website for which he is a moderator and support person.

104.	Defendant actively assists other cheaters in using and modifying these cheats in order to circumvent Epic's technological security measures.

105.	The cheats have no commercially significant purpose or use other than to circumvent Epic's technological security measures put in place to control access to Fortnite and protect Epic's copyrighted works, and unlawfully modify Epic's game software code.

106.	Defendant's actions constitute a violation of the DMCA, 17 U.S.C. §§ 1201(a)-(b) and 1203.

107.	Defendant's actions have been, and continue to be, willful and continue to be performed without the permission, authorization, or consent of Epic.

108.	As a direct result of Defendant's violations of the DMCA, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Epic is entitled to injunctive relief restraining and enjoining Defendant's continuing unlawful conduct under 17 U.S.C. § 1203(b).

109.   As a direct result of Defendant's violations of the DMCA, Epic is entitled to actual damages and Defendant's profits attributable to Defendant's violations of the DMCA under 17 U.S.C. § 1203(c).

110.   Alternatively, Epic is entitled to the maximum statutory damages permitted pursuant to 17 U.S.C. § 1203(c).

111.   Epic is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b).

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract)**

112.   Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 111 of this complaint, as if set forth fully herein.

113.   Access to and use of Epic's services, including Fortnite, is governed by and subject to the Terms.

114.   Access to and use of Fortnite is also governed by and subject to the EULA.

115.   In order to use Epic's services, including Fortnite, all users must "read and agree" to the Terms in order to create an account with Epic.

116.   In order to access Fortnite, users must "read and agree" to the terms of the EULA.

117.   Defendant agreed to the Terms and the EULA by creating an account with Epic, using and accessing Epic's services, and/or downloading, playing and/or accessing Fortnite. Therefore, the Terms and the EULA are both valid, enforceable contracts between Epic and the Defendant.

118.   On information and belief, Defendant regularly used and accessed Epic's services having knowledge that he was bound by the Terms and by the EULA.

119.   Epic has performed all of its obligations under the Terms and the EULA.

120. Defendant has and has continued to knowingly, intentionally, and materially breach the Terms and EULA by, among other things,

    a. making derivative works based on Fortnite;

    b. copying, reproducing, distributing, displaying, using, modifying, performing, republishing, or transmitting Fortnite in a way not authorized in the EULA or the Terms; and/or

    c. creating, developing, distributing, or using unauthorized software programs to gain advantage in any online or other game modes.

121. As a direct result of Defendant's breaches of the Terms and EULA, Epic has been, and will continue to be, harmed and is entitled to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendant.

### FIFTH CLAIM FOR RELIEF
#### (Intentional Interference with Contractual Relations)

122. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 121 of this complaint, as if set forth fully herein.

123. As set forth above, in order to play Fortnite, a user must first create an account with Epic. To create an account, a user must agree to abide by the Terms. A user's agreement to abide by the Terms creates a contract between Epic and the user.

124. The Terms expressly prohibit a user from "**copy[ing], modify[ing], creat[ing] derivative works of, publicly display[ing]**, publicly perform[ing], republish[ing] or transmit[ting] **any of the material obtained through [Epic's s]ervices**." (<u>Exhibit C</u> at 2) (emphasis added.)

125. In order to play Fortnite, a user must also agree to abide by the Fortnite EULA. A user's agreement to abide by the EULA also creates a contract between Epic and the user.

126.    The EULA prohibits a player from "**reverse engineer[ing], deriv[ing] source code from, modify[ing], adapt[ing], translat[ing], decompil[ing,] or disassembl[ing** Fortnite] or **mak[ing] derivative works based on** [Fortnite]" and "**creat[ing], develop[ing], distribut[ing], or us[ing] any unauthorized software programs to gain advantage in any online or other game modes**." (Exhibit D at 1) (emphasis added.)

127.    Epic's contracts with its users are valid and enforceable.

128.    On information and belief, Defendant has knowledge of the contracts between Epic and its registered users, and Defendant has knowledge of the previously recited prohibitions that the Terms and the EULA place on users since Defendant is a registered user of Epic's services and has agreed to the terms of both the EULA and the Terms.

129.    Defendant, knowing that the use of cheats by Fortnite users breaches the contracts between Epic and its users, has intentionally and willfully encouraged and induced users of Fortnite to purchase and use the cheats.

130.    Defendant, therefore, has intentionally interfered, and will continue to interfere, with the contracts formed between Epic and its users.

131.    On information and belief, Defendant has acted without justification in intentionally interfering with the contracts between Epic and its users.

132.    On information and belief, as a direct result of Defendant's actions, Epic has suffered damages in an amount to be proven at trial including, but not limited to, loss of goodwill among users of Epic's services, decreased profits, and lost profits from users whose accounts Epic has terminated for violations of the Terms and the Fortnite EULA.

133.    As a direct result of Defendant's actions, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at

law.  Epic is entitled to injunctive relief to restrain and enjoin Defendant's continuing unlawful conduct.

134.    As a further result of Defendant's actions, on information and belief, Defendant has been unjustly enriched by the sales of the cheats that violate the Terms and the Fortnite EULA.  The proceeds of the sales are a direct result of Defendant's intentional interference with Epic's contracts with its users and rightfully and equitably belong to Epic.  Epic requests that the Court impose a constructive trust over Defendant's proceeds.

135.    Epic is further entitled to compensatory damages and any other available relief.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiffs respectfully request that the Court:

1.    Enter judgment in Plaintiff's favor and against Defendant on all claims herein;

2.    Adjudge Defendant to have infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

3.    Adjudge Defendant to have contributorily infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

4.    Adjudge Defendant to have circumvented a technological measure that effectively controls access to a protected work owned by Epic in violation of 17 U.S.C. §§ 1201(a)-(b), 1203, *et seq.*;

5.    Adjudge Defendant to have breached the Terms of Service and the Fortnite End User License Agreement in violation of North Carolina law;

6.    Adjudge Defendant to have tortuously interfered with contracts between Plaintiffs and users of its services in violation of North Carolina law;

7.    Declare that Defendant's infringement and other wrongdoings were willful in

nature;

8.     Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily and permanently enjoins Defendant from (i) infringing any of Epic's copyrights in Fortnite, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyrighted software in violation of the Copyright Act; (ii) inducing or materially contributing to the direct infringement of any of Epic's copyright protected work Fortnite by others, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyright protected work Fortnite in violation of the Copyright Act; and/or (iii) using any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected work Fortnite, where the technological measure effectively controls access to Epic's copyrighted Fortnite code in order to protect Epic's exclusive rights in Fortnite; and (iv) recognizing that such order is final and enforceable in the United States, Canada, and the other 172 contracting countries to the Berne Convention under articles 2 and 3 of the Berne Convention;

9.     Enter an order that preliminarily and permanently enjoins Defendant from (i) violating the Terms of Service; (ii) violating the EULA; and/or (iii) intentionally interfering with Epic's contractual relations with the other parties to those agreements; and (iii) recognizing that such order is final and enforceable in the United States, Canada, and throughout the world because the Terms of Service and the EULA are worldwide in scope;

10.    Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily and permanently enjoins Defendant by (i) requiring the destruction of all copies of cheats or hacks in Defendant's possession, custody, or control that can be used to infringe Epic's copyrights in

Fortnite so as to prevent or restrain Defendant's continued violations of Epic's copyrights in Fortnite; and (ii) recognizing that such order is final and enforceable in the United States, Canada, and the other 172 contracting countries to the Berne Convention under articles 2 and 3 of the Berne Convention;

11.     Enter an order pursuant to 17 U.S.C. §§ 504 and/or 1203(c) (i) requiring that Defendant pay Epic a sum certain reflecting the maximum amount of statutory damages permitted under 17 U.S.C. §§ 504 and/or 1203(c), or, in the event that Epic elects to instead to recover actual damages and Defendant's additional profits from Defendant at any time before final judgment is rendered, (ii) requiring that Defendant pay Epic's actual damages and Defendant's additional profits, together with interest, including pre-judgment, to be determined as a sum certain by the Court; and (iii) recognizing that such order is final and enforceable in the United States, Canada, and the other 172 contracting countries to the Berne Convention under articles 2 and 3 of the Berne Convention;

12.     Enter an order pursuant to 17 U.S.C. §§ 505 and 1203(b)  that (i) awards Epic its attorneys' fees, costs, and expenses in a sum certain pursuant to 17 U.S.C. § 505 and/or § 1203(b); and (ii) recognizes that such order is final and enforceable in in the United States, Canada, and the other 172 contracting countries to the Berne Convention under articles 2 and 3 of the Berne Convention;

13.     Award Plaintiffs such other and further relief as the Court deems just and proper.

This the 10th day of October, 2017.

**PARKER POE ADAMS & BERNSTEIN LLP**


/s/Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834

christhomas@parkerpoe.com
Tasneem D. Delphry
N.C. Bar No. 47697
tasneemdelphry@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564

*Attorneys for Plaintiffs*